UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| ROBYN C., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security[1], <br><br> Defendant. | Case No. 4:22-cv-00054-DCN-REP <br><br> **REPORT AND RECOMMENDATION RE: PETITION FOR REVIEW** <br><br> **(Dkts. 1, 14)** |

Pending is Plaintiff Robyn C.'s Complaint (Dkt. 1) and an accompanying Memorandum of Law in support of the Complaint (Dkt. 14) appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Compl. (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

I. **ADMINISTRATIVE PROCEEDINGS**

On August 13, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date ("AOD") of August, 1, 2019. AR[2] 62. This application was denied on November 18, 2019, and again on reconsideration May 13, 2020. AR 93, 104. On June 26, 2020, Plaintiff filed a Request for Hearing before an Administrative Law

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi will be substituted, therefore, as the respondent in this suit. Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).
[2] Citations to "AR __" refer to the page cited in the administrative record.

Judge ("ALJ"). AR 120. On January 22, 2021, ALJ Wynne O'Brien-Persons held a telephonic hearing, at which time Plaintiff, represented by attorney Brad D. Parkinson, appeared and testified. AR 13. Mark J. Schwager, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

On February 12, 2021, the ALJ issued a decision denying Plaintiff's claims, finding her not disabled within the meaning of the Social Security Act. AR 13-29. Plaintiff timely requested review by the Appeals Council. The Appeals Council denied her request for review on December 9, 2021, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1.

Plaintiff filed this action, asserting two points of error: (i) that the ALJ's residual functioning capacity ("RFC") determination is unsupported by substantial evidence because the ALJ failed to incorporate Plaintiff's mental limitations when posing hypothetical questions to the VE, and (ii) that the ALJ erred in rejecting Plaintiff's subjective symptom allegations. Pln.'s Br at 1. Plaintiff requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits or remand the case for further proceedings. *Id.* at 15.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. REPORT

**A. The Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable

impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal a listed impairment, the claim cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).

In the fourth step of the evaluation process, the ALJ decides whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th

Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.

**B. The ALJ's Findings**

The ALJ found that Plaintiff suffers from the following severe impairments: osteoarthritis of the right ankle, bilateral thumb osteoarthritis, mild bilateral hand osteoarthritis, left midfoot osteoarthritis, bilateral midfoot arthrosis, mild lumber degenerative disc disease, obesity, and hearing loss. AR 15. Further, the ALJ found that Plaintiff suffered from a variety of nonsevere physical impairments, including hypertension, Type II diabetes mellitus, carpal tunnel surgical release, an acute episode of sigmoid diverticulitis, kidney stones, a pulmonary nodule, and obstructive sleep apnea. AR 15-16.

The ALJ also found that Plaintiff suffered from several non-severe mental impairments – generalized anxiety disorder, attention-deficit disorder, and post-traumatic stress disorder. AR 18. With respect to Plaintiff's mental impairments, the ALJ found that they caused no limitation in Plaintiff's ability to understand, remember, or apply information nor in her ability to interact with others. AR 18-19. The ALJ, however, found that Plaintiff's mental impairments caused mild limitations in Plaintiff's ability to concentrate, persist, or maintain pace and her ability to adapt or manage herself. AR 19.

Ultimately, the ALJ determined that Plaintiff had the following RFC:

> [She could] perform sedentary work . . . except claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps or stairs. She can occasionally balance, stoop, kneel, crouch, or crawl. She can frequently finger with the bilateral upper extremities. She is limited to an office noise level setting. She can occasionally grasp . . . bilaterally.

AR 22.  Based on this RFC, the ALJ found, after testimony from the VE, that Plaintiff could perform her past relevant work as a customer service representative or employment clerk.  AR 28.  The ALJ, therefore, found that Plaintiff was not disabled.  AR 29.

## C. Analysis

1. <u>The ALJ did not err in rejecting Plaintiff's subjective symptom allegations.</u>

Plaintiff argues that the ALJ improperly evaluated her symptom testimony relating to her bilateral hand pain.  Pln.'s Br. at 12-15.  She contends that the ALJ did not provide a "logical bridge" between the evidence she considered and her RFC finding that Plaintiff was limited to frequent fingering and occasional grasping.  *Id.* at 13.  Accordingly, Plaintiff contends that the ALJ erred in discounting Plaintiff's testimony because the ALJ did not offer clear and convincing reasons for doing so.  *Id.* at 14-15.  The Court disagrees.

Where the record contains objective medical evidence "establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which [s]he complains" and there has not been an affirmative finding of malingering, a claimant's subjective symptom testimony may only be rejected for clear and convincing reasons.  *Carmickle v. Comm'r Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to produce her symptoms, and that Plaintiff was not malingering.  AR 22-23.  Accordingly, the Court only analyzes whether the ALJ offered clear and convincing reasons to discount Plaintiff's symptom testimony.

Generally speaking, the ALJ found Plaintiff's subjective symptom testimony unreliable because it was inconsistent with the medical records showing that Plaintiff's bilateral hand surgeries were successful.  AR 24.  The ALJ considered Plaintiff's testimony that her bilateral hand surgeries had left her with a lack of mobility, affecting her ability to turn doorknobs and

open jars, water bottles, and Ziplock bags. AR 23. Further, the ALJ noted Plaintiff's testimony that she needed frequent breaks while writing, and she had difficulty using a keyboard and mouse due to hand pain from her osteoarthritis. *Id.* Finally, the ALJ discussed Plaintiff's testimony that she could use a keyboard "occasionally" and could not handle filing paperwork "on a frequent basis." *Id.*

The ALJ did not find this testimony entirely credible. The ALJ pointed out that Plaintiff underwent two hand surgeries, the first on her right thumb in November 2019, and the second on her left thumb in February 2020. AR 24. Follow-up visits revealed that Plaintiff's surgeries both went well. *Id.*; *see also* AR 486; AR 485-507. After her right thumb surgery, Plaintiff reported tenderness on shucking of her left thumb CMC joint but not on the right side. AR 24, 486. Following her left thumb surgery, Plaintiff reported that she was doing "very well," and upon examination, her thumb was sitting in a good position, she had minimal tenderness around the surgery site, and was "quite mobile." AR 24, AR 506-07. Finally, the ALJ noted that, following her surgeries, Plaintiff had not made persistent thumb complaints and her condition had not required ongoing treatment. AR 24.

The ALJ's reasons for rejecting Plaintiff's testimony are sufficiently clear and convincing. An ALJ may rely on records showing a successful course of treatment. *Buckner-Larkin v. Astrue*, 450 Fed. App'x 626, 628 (9th Cir. 2011). Further, the absence of ongoing complaints after treatment is an acceptable reason to reject subjective symptom testimony. *Id.*; *see also Bartlett v. Colvin*, No. 1:14-cv-00142-SB, 2015 WL 2412457, at *10 (D. Or. May 21, 2015) ("Clear and convincing reasons for rejecting a claimant's subjective symptom testimony 'include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily

activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of.'"). Accordingly, the ALJ did not err in relying on Plaintiff's medical records following her surgeries to conclude that Plaintiff's testimony about the severity of her limitations was not entirely credible.

To the extent that Plaintiff argues that the ALJ did not provide a "logical bridge" between her findings and her conclusions, the Court finds that argument misplaced. The "logical bridge" rule is rule of review for district courts. In essence, the rule is a shorthand expression for the general proposition that an ALJ must make adequate factual findings to support her legal conclusions. *See Juli K. v. Comm'r Soc. Sec.*, Case No. 2:19-cv-01113, 2020 WL 5793695, at *3 (W.D. Wash. Sept. 29, 2020) ("The Social Security Administration must set forth the reasoning behind its decisions in a way that allows for meaningful review, and the ALJ must build an accurate and logical bridge from the evidence to his or her conclusions.") (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Stated differently, because a court may only affirm on the reasons provided for by the ALJ, the ALJ must place adequate reasoning and factual findings to allow for a meaningful review of the ALJ's decision. *See Brown-Hunter*, 806 F.3d at 494.

Reviewing the ALJ's decision here, the Court finds that it is adequately explained to allow for meaningful review. As discussed above, the ALJ clearly laid out Plaintiff's subjective symptom allegations and then proceeded to detail the evidence she found inconsistent with those allegations. Further, the ALJ discussed all the evidence she considered in reaching her RFC conclusions, including Plaintiff's reported symptoms, state agency medical evaluations, third party reports, and the objective medical evidence. In short, the ALJ's decision does not leave the

undersigned guessing as to the reasoning for the ALJ's conclusions, and the ALJ did not error in rejecting Plaintiff's subjective symptom testimony.

2. The ALJ's RFC finding is supported by substantial evidence

Plaintiff contends that the ALJ erred in failing to appropriately account for her mental impairments in reaching an RFC determination. Pln.'s Br. at 8 (Dkt. 14). Specifically, Plaintiff argues that the ALJ found that she had two mild mental impairments, but did not include limitations caused by those impairments in her RFC. *Id.*

A claimant's RFC is the "most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1445(a)(1); *see also* 20 C.F.R. § 416.945. In making an RFC assessment, an ALJ must consider all of a claimant's impairments, even those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity"); 20 C.F.R. § 416.945(a)(2) (same). Further, SSR 96-8p provides

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

Here, despite Plaintiff's contentions, the record shows that the ALJ did, in fact, consider Plaintiff's mental limitations in assessing Plaintiff's RFC. The ALJ found Plaintiff's mental impairments were non-severe at step two of the sequential process. AR 18. At that point, the

ALJ found that Plaintiff's mental impairments "cause[d] no more than 'mild' limitation in any of the functional areas" set forth in 20 C.F.R. part 404, subpart P, appendix 1 (the "Paragraph B criteria") and that the evidence on the record did not otherwise show that the mental impairments caused "more than a minimal limitation in the claimant's ability to do basic work activities."  AR 19.  Further, the ALJ concluded that her RFC assessment "reflects the degree of limitation . . . found in the 'paragraph B' mental function analysis."  AR 20.

While an ALJ's analysis of severity under the Paragraph B criteria is not an RFC assessment, an ALJ may carry her burden under the Regulations to consider a claimant's mental limitations in the RFC by expressly incorporating the ALJ's findings on the Paragraph B criteria into her RFC determination.  *Van Houten v. Berryhill*, Case No.: 1:17-cv-01238-JLT, 2019 WL 691200, at *14 (E.D. Cal. Feb. 19, 2019) ("When an ALJ performs the Paragraph B analysis and indicates the 'degree of limitation' is incorporated into the RFC, this is sufficient to carry the burden imposed by the Regulations."); *see also Huang v. Berryhill*, Case No.: 16-cv-02966-WQH-MDD, 2017 WL 6557757, at *8-9 (S.D. Cal. Dec. 22, 2017); *Scotellar v. Colvin*, No. 2:13-cv-00696-GMN-PAL, 2015 WL 4275970, at *9 (D. Nev. June 22, 2015).  When an ALJ incorporates her analysis of the Paragraph B criteria into her RFC assessment, an "omission of mental limitations from the RFC does not indicate the mental impairments were not considered, but rather reflects the conclusion that the impairments would not interfere with Plaintiff's ability to perform basis work activities."  *Van Houten*, 2019 WL 691200 at * 14.  Consequently, the ALJ did not err in omitting Plaintiff's mental limitations from the RFC assessment.

Next, Plaintiff again argues that the ALJ failed to provide a "logical bridge" between her findings on Plaintiff's mental limitations, and the evidence she relied on in reaching those findings.  Pln.'s Br. at 9-11 (Dkt. 14).  She contends that the ALJ did not explain how Plaintiff's

daily activities did not support a conclusion that Plaintiff suffered from only mild limitations of her ability to adapt or manage herself and her ability to concentrate, persist, or maintain pace. *Id.*

As discussed above, Plaintiff's argument is unavailing. The ALJ's decision contains significant reasoning and allows for meaningful review by this Court. In applying the Paragraph B criteria, the ALJ looked to both Plaintiff's mental health treatment records and her daily activities to find that she only had a mild limitation in two of the four functional areas. AR 18-19.

With respect to the third Paragraph B functional area – the ability to concentrate, persist, or maintain pace – the ALJ provided a list of examples that would demonstrate a lack of limitation, including:

> initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

AR 19. The ALJ explained that Plaintiff had made significant improvements in her mental health since beginning treatment[3] and that she was "able to prepare meals, pay bills, attend medical appointments, take medications, drive a car, shop for groceries, engage in light housekeeping, travel, attend to her granddaughter, refurbish the basement, and sew." *Id.* With the above examples in mind, the daily activities the ALJ discussed show that Plaintiff suffered no

---

[3] The treatment notes cited by the ALJ showed, among other things, that Plaintiff reported that she was doing well, thought her medication was working, had increased mood and energy, and that she "really fe[lt] good." AR 17-18; AR 612; AR 732-33. The records further indicated that Plaintiff had appropriate affect; a normal rate and volume of speech; "no delusions, preoccupations, obsessions, [or] compulsions"; "[l]ogical, linear and goal directed" thought processes"; and "demonstrated adequate concentration." *See, e.g.*, AR 598.

more than a mild limitation in this functional area without the need for further explanation. For instance, several tasks directly implicate Plaintiff's ability to complete tasks in a timely manner, like paying bills, taking medications, and attending medical appointments. Others show an ability to initiate and perform known tasks, such as grocery shopping, housekeeping, and sewing. In short, the ALJ built a "logical bridge" between Plaintiff's daily activities and her finding that Plaintiff only had a mild limitation in this functional area.

The same is true for the ALJ's finding with respect to the fourth functional area – the ability to adapt or manage oneself. The ALJ listed examples:

> responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

AR 19. As with the prior functional area, the ALJ noted that Plaintiff had shown significant improvements in her mental impairments and noted her daily activities like "attend[ing] to personal care[,] . . . tak[ing] care of her dogs[,] . . . [and] babysit[ting] her granddaughter." *Id.* Further, the ALJ noted that Plaintiff's medical records showed "no evidence of emotional outbursts in a clinical or home setting." *Id.* Considering this evidence in light of the examples provided by the ALJ, there is a sufficient explanation for the ALJ's finding. Plaintiff attended to her own personal care, which is consistent with the example of maintaining personal hygiene and attire appropriate for a work setting. Further, Plaintiff babysat her granddaughter, which is consistent with the ability to respond to demands, adapt to changes, be aware of normal hazards and take appropriate precautions. In short, the ALJ's decision sufficiently connects the evidence with her findings, allowing this Court to conduct a meaningful review.

Consequently, the Court concludes that the ALJ's RFC assessment is supported by substantial evidence because (i) the RFC determination expressly incorporated the ALJ's analysis of the Paragraph B criteria and (ii) the ALJ's adequately connected her findings on the Paragraph B criteria to the evidence upon which she relied.

## IV.  **RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be **AFFIRMED**, that Plaintiff's Petition for Review (Dkt. 1) be **DENIED**, and this action be **DISMISSED** in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period."  Additionally, the other party "may serve and file a response, not exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: February 27, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge